# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUAN MEDELLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-617-TCK-FHM |
| ) | |
| COMMUNITYCARE HMO, INC., ) | |
| an Oklahoma corporation, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's Motion to Remand (Doc. 11).

## I.    Background

Plaintiff filed a Petition in the District Court in and for Creek County, State of Oklahoma, alleging bad faith breach of an insurance contract. In the Petition, Plaintiff claims he is entitled to benefits under a health insurance policy (the "Plan") he received through his wife's employment at St. John Medical Center, Inc. ("SJMC"). Defendant CommunityCare HMO, Inc., which manages the Plan, removed this matter pursuant to 28 U.S.C. § 1331. In its Notice of Removal, Defendant asserts that the Plan is a welfare benefit plan subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and that Plaintiff's claim for benefits is completely preempted by ERISA. Plaintiff seeks to remand this matter, arguing that the Plan is a "church plan" as defined in 29 U.S.C. § 1002(33) and is therefore exempt from ERISA.

In support of its position that the Plan is governed by ERISA, Defendant has submitted the affidavit of Lex S. Anderson ("Anderson") ("Anderson Affidavit"), Executive Vice President and Chief Financial Officer of St. John Health System, Inc. ("SJHS"). (*See* Anderson Aff., Ex. A to Def.'s Resp. to Pl.'s. Mot. to Remand.) Therein, Anderson states as follows: (1) the Sisters of the

Sorrowful Mother ("SSM") is the sole sponsor of Marian Health System, Inc., ("Marian"), which is the sole sponsor of SJHS; (2) SJHS is the sole sponsor and corporate member of SJMC;[1] (3) SJHS bylaws provide Marian with "reserved powers regarding the governance of SJHS" and the SJHS employers, including SJMC, (*id.* at 3); (4) "subject to these reserved powers, SJHS and the [SJHS employers, including SJMC,] govern themselves and operate the delivery of health services autonomously," (*id.*); (5) neither SSM nor Marian provide any financial support to SJHS or the SJHS employers, including SJMC; (6) no employee or patient of SJHS or the SJHS employers, including SJMC, is subject to any requirement that he/she be a member of a specific religious congregation or denomination; (7) the SJHS board of directors recommends its directors to Marian for ratification; (8) less than half of the SJHS directors are members of SSM; (9) SJHS appoints directors to SJMC without ratification from Marian; (10) Marian does not appoint or ratify directors for any of the other SJHS employers; and (11) less than half of the board members of other SJHS employers' boards are members of SSM.

Further, the Anderson Affidavit provides information about the Plan, stating that "each of the [SJHS employers] buys into the Plan by contributing premiums based on the number of beneficiaries employed by that entity." (*Id.* at 1). According to Anderson, "[s]ince 1975, the Plan

---

[1] Anderson states that SJHS is the "parent, grandparent, or sole member" of the following entities: (1) SJMC; (2) St. John Health System, Inc.; (3) St. John Owasso, Inc. d/b/a St. John Health System Management Services, Inc.; (4) St. John Sapulpa, Inc.; (5) St. John Villas, Inc.; (6) St. John Medical Center Foundation, Inc.; (7) Utica Services, Inc.; (8) OMNI Medical Group, Inc.; (9) Regional Medical Laboratory, Inc.; (10) Physician Support Services, Inc.; (11) Magnum Health Care, Inc.; (12) St. John Physicians, Inc.; (13) St. John Anesthesia Services, Inc.; (14) St. John Cardiovascular Medicine, Inc.; (15) St. John Cardiovascular Services, Inc.; (16) St. John Emergency Physicians, Inc.; (17) Owasso Medical Facility, Inc.; and (18) Craig County Medical Services Corporation (collectively "SJHS employers"). (*See id.* at 2.) Eight (8) of the SJHS employers are tax exempt, and ten (10) of them are for-profit entities. (*See id.* at 2-3.)

has been administered in accordance with applicable ERISA requirements, including filing annual ERISA Form 5500s,[2] provision Summary Plan Descriptions, and other applicable disclosures[.]" (*Id.* at 3.) Defendant submits the following exhibits to demonstrate that the Plan has been administered pursuant to ERISA: (1) a December 20, 1974 Application for Postponement of Effective Date, wherein SJMC's predecessor requested a delay until July 1, 1975 to comply with ERISA ("1974 Application for Postponement"), (*see* Ex. A-1 to Def.'s Resp. to Pl.'s Mot. to Remand); (2) Form 5500s from multiple years, (*see* Exs. A-2, A-4-A-7 to Def.'s Resp. to Pl.'s Mot. to Remand); (3) a 1976 Plan Description submitted to the U.S. Department of Labor pursuant to ERISA, (*see* Ex. A-3 to Def.'s Resp. to Pl.'s Mot. to Remand); (4) various letters from the Internal Revenue Service in response to the filing of Form 5500s, (*see* Exs. A-8-A-12 to Def.'s Resp. to Pl.'s Mot. to Remand); (5) Summary Annual Reports made pursuant to ERISA, (*see* Exs. A-13 and A-14 to Def.'s Resp. to Pl.'s Mot. to Remand); and (6) a Summary Plan Description made pursuant to ERISA (*see* Ex. B-1 to Def.'s Resp. to Pl.'s Mot. to Remand).

In support of his contention that the Plan constitutes a church plan, Plaintiff submits language from SJHS's website. Specifically, SJHS's website outlines its "Mission" as follows:

> [SJHS] is a not-for-profit Catholic healthcare corporation sponsored by [SSM]. The corporation furthers the works of the congregation, that of continuing the healing ministry of Jesus Christ. It serves as an integral part of the Roman Catholic Church, assists in carrying out its mission and operates in conformance with The Ethical and Religious Directives for Catholic Health Facilities.

---

[2] "A Form 5500 is an annual disclosure document, which most large employers that offer employee benefits plans are required to submit as part of ERISA's overall reporting and disclosure framework." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 n.2 (6th Cir. 2007) (citing 29 U.S.C. § 1023)).

3

> Faithful to the sponsorship mission, philosophy and values, the Health System's mission is to provide healthcare and related ministries for the people served, especially the sick, the poor and the powerless.
>
> The Health System provides a network of interdependent health facilities, programs and services that are educational, scientific, religious, and charitable in nature, and are devoted to improving the education and well-being of those served and those who serve.

(SJHS Mission Statement, Ex. 1 to Pl.'s Mot. to Remand.) Further, under "Our Philosophy," the website states as follows:

> [T]he [SSM's] [SJHS] witnesses to the healing mission of Jesus Christ as expressed by the teachings of the Roman Catholic Church and by the philosophy and values of the [SSM]. In pursuit of this healing mission, we subscribe to the following principles and beliefs:
>
> • We believe human life is a sacred gift from God, created in his divine image and called to eternal union with Him. . . .
>
> • We believe all persons serving with us should receive recognition of their personal dignity and worth as well as appropriate material compensation in accordance with the principles of Christian justice.

(SJHS Philosophy, Ex. 1 to Pl.'s Mot. to Remand.) Plaintiff also points out that Sister Mary Therese Gottschalk is listed as the Chief Executive Officer of SJMC.[3]

## II. Standard for Motion to Remand

Pursuant to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." "This rule is inflexible and without exception, requiring a court to deny jurisdiction in all cases where it does not

---

[3] Plaintiff cites to the SJHS website in support of this proposition. (*See* Pl.'s Mot. to Remand 3 (citing to Ex. 1 to Pl.'s Mot. to Remand).) Although the Court did not find any reference to Sister Mary Therese Gottschalk in the portion of the SJHS website attached to Plaintiff's motion, she is listed as the Chief Executive Officer of SJMC in an exhibit submitted by Defendant. (*See* Ex. A-13 to Def.'s Resp. to Pl.'s Mot. to Remand.)

affirmatively appear in the record." *Geter v. St. Joseph Healthcare Sys., Inc.*, 575 F. Supp. 2d 1244, 1248 (D.N.M. 2008) (internal quotations and citations omitted). "The party invoking the jurisdiction of a federal court has the duty to establish that federal jurisdiction does exist, but since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence." *Id.* (citing, *inter alia*, *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)). "Indeed, it is the burden of the party opposing remand to show jurisdiction by a preponderance of the evidence." *Geter*, 575 F. Supp. 2d at 1248 (internal quotations and citations omitted). Any doubt concerning whether a case is removable must be resolved in favor of remand. *See Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982).

### III. Statutory Framework

ERISA establishes a comprehensive scheme for regulating the administration of employee welfare benefit plans. Section 1144(a) of ERISA provides that ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). Five categories of employee benefit plans are specifically exempted from the provisions of ERISA, however. *See* 29 U.S.C. § 1003(b)(1)-(5) (listing exempted plans). Included in these exempted benefit plans are "church plan[s] . . . with respect to which no election has been made under section 401(d) of [the Internal Revenue Code]." 29 U.S.C. § 1003(b)(2). Thus, if a plan constitutes a church plan, "no federal question jurisdiction [exists] because the plan [is not] covered by ERISA." *Lown v. Continental Casualty Co.*, 238 F.3d 543, 547 (4th Cir. 2001).

A "church plan" is defined as a "plan established and maintained . . . for its employees . . . by a church . . . which is exempt from tax under section 501 of Title 26." 29 U.S.C. § 1002(33)(A).

5

ERISA defines a "plan established and maintained for its employees . . . by a church" to include a "plan maintained by an organization . . ., the principal purpose or function of which is the administration or funding of a plan or program for the provision of . . . welfare benefits . . . for the employees of a church . . ., if such organization is *controlled by or associated with* a church or a convention or association of churches." 29 U.S.C. §1002(33)(C)(i) (emphasis added). Thus, to qualify as a "church plan," a plan must be maintained by an organization that is "controlled by or associated with" a church or an association of churches. *See also Lown*, 238 F.3d at 547. By statute, an organization is "associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. §1002(33)(C)(iv). The Fourth Circuit has determined "association" by assessing: "1) whether the religious institution plays any official role in the governance of the organization; 2) whether the organization receives assistance from the religious institution; and 3) whether a denominational requirement exists for any employee or patient/customer of the organization." *Lown*, 238 F.3d at 548. With regard to "control," "[a]n organization is controlled by a church when, for example, a religious institution appoints a majority of the organization's officers or directors." *Lown*, 238 F.3d at 547 (citing 26 C.F.R. § 1.414(e)-1(d)(2)).

Finally, in assessing whether a plan is a "church plan," the applicable regulations defining a church plan exclude plans maintained by two or more employers unless:

> (1) [e]ach of the employers is a church that is exempt from tax under section 501(a), and (2) [w]ith respect to the employees of each employer, the plan meets the provisions of paragraph (b)(2)(ii) of this section or would be determined to be a church plan based on all the facts and the circumstances described in paragraph (b)(2)(iii) of this section.

26 C.F.R. §1.414(e)-1(c)(1)-(2).

6

**IV.     Discussion**

Defendant contends that the Plan is governed by ERISA for the following reasons: (1) "the Plan has effectively elected to be under ERISA," (Def.'s Resp. to Pl.'s Mot. to Remand 8); (2) the Plan falls outside the definition of "church plan" because it is maintained by multiple employers and not all of the employers are tax exempt; and (3) the Plan falls outside the definition of "church plan" because the employers that maintain the Plan are not sufficiently associated with or controlled by a church.  Plaintiff argues that, based on the current record, Defendant has not established that the Plan is indeed a church plan.  Plaintiff alternatively moves for discovery in order to better ascertain the nature of the Plan and the relationship between SJHS and SSM.

**A.     Election Under ERISA**

As stated above, the ERISA church plan exception is limited to a church plan "with respect to which *no election* has been made under section 410(d) of [the Internal Revenue Code] [("Section 410(d)")]."  29 U.S.C. § 1003(b)(2).  Section 410(d) provides that if a "church . . . which maintains any church plan makes an election under this subsection . . ., then the provisions of this title relating to participation, vesting, funding, etc. . . . shall apply to such church plan as if such provisions did not contain an exclusion for church plans."  26 U.S.C. § 410(d)(1).  Plaintiff attempts to argue that this election provision applies only to pension benefit plans, as opposed to welfare benefit plans like the one at issue in this case.[4]  The Court rejects this position, as other courts have applied the

---

[4] A pension benefit plan is defined as any plan that "provides retirement income to employees, or [r]esults in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A)(i),(ii).  Welfare benefit plans include any plan established or maintained for the purpose of providing, *inter alia*, medical benefits, surgical benefits, or benefits in the event of sickness, accident, disability, death, or unemployment.  *See* 29 U.S.C. § 1002(1).  The parties do not dispute that the Plan constitutes a welfare benefit plan.

7

election provision to welfare benefit plans. *See Catholic Charities of Me. v. City of Portland*, 304 F. Supp. 2d 77, 87-90 (D. Me. 2004) (rejecting defendant's argument that only church pension plans may voluntarily elect to be subject to federal regulation) (analyzing statutory language, relevant regulations, and legislative intent to conclude that "a church welfare benefit plan can make a section 410(d) election"); *see also Welsh v. Ascension Health*, No. 3:08cv348/MCR/EMT, 2009 WL 1444431, at *7 (N.D. Fla. May 21, 2009) (stating the Eleventh Circuit has implied in dicta that welfare benefit plans may make a Section 410(d) election) (rejecting defendant's argument that election is only available for pension plans) (citing *Am. Assoc. of Christian Sch. Voluntary v. United States*, 850 F.2d 1510, 1517 (11th Cir. 1988)); *Rinehart v. Life Ins. Co. of N. Am.*, No. C08-5486 RBL, 2009 WL 995715, at *5 (W.D. Wash. April 14, 2009) (analyzing whether employer had effectively elected to have ERISA apply to long-term disability plan); *Geter*, 757 F. Supp. 2d at 1249-50 (analyzing whether employer's Section 410(d) election for long-term disability plan was retroactive).

A Section 410(d) election may be made by attaching a statement to the annual return required under 26 U.S.C. § 6058(a) (the Form 5500) or by requesting a determination letter relating to the qualification of the plan. *See* 26 C.F.R. § 1.410(d)-1(c)(2)-(3). If the election is made by statement, said statement must indicate that the election is made under Section 410(d) and the first plan year for which it is effective. *Id.* at § 1.410(d)-1(c)(5). In assessing the sufficiency of a welfare benefit plan election, as opposed to a pension benefit plan election, one court has directly applied these regulations to the plan at issue. *See Rinehart*, 2009 WL 995715, at *5 (finding that employer never made "an affirmative election under [Section] 410(d) as required to have [] ERISA apply to the [long-term disability] plan [at issue]" despite the filing of numerous Form 5500s) (applying

8

requirements of 26 C.F.R. § 1.410(d)-1) (stating "[t]he Court agrees that [the regulations] requir[e] a strict election, especially considering the irrevocable nature of the election after it is made"). Another court, however, found that the regulations apply solely to pension benefit plans, as opposed to welfare benefit plans, and "[t[here being no regulation governing a church welfare plan's election, a church welfare plan would be entitled to elect in any reasonable form and manner, including by attaching a statement for form 5500." *Catholic Charities*, 304 F. Supp. 2d at 89 (finding election statement, which was attached to a Form 5500, was sufficient).

Either way, whether the Court applies the precise requirements of the election regulations or merely looks for a "reasonable form and manner" of election, there must be some sort of affirmative election, which is notably missing in this case. Defendant appears to contend that the 1974 Application for Postponement constitutes an "election." (*See* Def.'s Resp. to Pl.'s Mot. to Remand 9 (arguing that "by application to the United States Department of Labor dated December 20, 1974, the employer effectively agreed to ERISA coverage of its group health insurance plan[.]"); Ex. A-1 to Def.'s Resp. to Pl.'s Mot. to Remand).) The Court finds this position misplaced. In contrast to *Catholic Charities*, where there was a statement of election attached to a Form 5500, there is no such statement of election included or inherent in the 1974 Application. *Cf. Catholic Charities*, 304 F. Supp. 2d at 89 (finding statement of election, which was attached to a Form 5500, was "reasonable form and manner" of election under Section 410(d)). Rather, the 1974 Application seeks a delay until July 1, 1975 in which to comply with ERISA, but, in so doing, fails to affirmatively elect to be governed by ERISA. While this document could be used to demonstrate a belief on the part of SJHS' predecessor that ERISA governed the Plan, such belief is not enough to constitute an affirmative election. *See Rinehart*, 2009 WL 995715, at *5 (finding that although

9

the employer "may have believed that ERISA applied to the [long-term disability plan] (after years of filing Form 5500's), such was not the case" because employer did not make "an affirmative election" under Section 410(d)). Therefore, based on the absence of any affirmative election in the record, the Court is unwilling to find that the Plan is governed by ERISA because of an election pursuant to Section 410(d).

### B. Multiple Employers/Control

Defendant further argues that the Plan does not constitute a church plan because: (1) it is maintained by multiple employers and not all employers are tax exempt; and (2) the SJHS employers are not sufficiently controlled by or associated with a church so as to bring the Plan within the definition of "church plan." Plaintiff disputes that the Plan is not a church plan, pointing to certain deficiencies in Defendant's evidence. In the alternative, Plaintiff seeks additional time for discovery in order to refute the evidence presented by Defendant.

The nature of the Plan and the precise contours of the relationship between SJHS and SSM are fact-intensive inquiries. The Court finds that Plaintiff's request for discovery is well founded, as the current record before the Court is somewhat incomplete regarding these issues. For example, regarding the nature of the Plan, although the Anderson Affidavit states that all SJHS employers buy into the Plan, certain documents attached to the Anderson Affidavit indicate that the Plan is a "single employer plan," and/or list the employer as SJMC, which is only one of the SJHS employers. (*See* Exs. A-2, A-4-A-8, A-10-A-14 to Def.'s Resp. to Pl.'s Mot. to Remand.) This apparent inconsistency, without additional documentation or explanation, makes it difficult for the Court to determine whether the Plan falls into the church plan exclusion outlined in the Treasury Regulations.

*See* 26 C.F.R. §1.414(e)-1(c)(1)-(2) (stating church plans exclude plans maintained by two or more employers unless each of the employer is tax exempt).

Further, the Court is unable to accurately assess the role of SSM and Marian in the governance of SJHS and the various SJHS employers from the current record. Specifically, the Anderson Affidavit states that the "SJHS Bylaws provide Marian with reserved powers regarding the governance of SJHS (including the other Plan Employers)." (Ex. A to Def.'s Resp. to Pl.'s Mot. to Remand at 3.) However, no additional explanation is provided as to the precise nature of these "reserved powers," and SJHS' bylaws are absent from the record. Understanding the precise governing powers of Marian and SSM over SJHS and the SJHS employers is key to determining whether Marian and SSM sufficiently "control" or are "associated" with SJHS and the SJHS employers so as to render the Plan a church plan.

Therefore, because a federal court must satisfy itself of its subject matter jurisdiction before proceeding in any case, *see Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1309-10 (10th Cir. 1998), and because "a more satisfactory showing of the facts is necessary" in order for the Court to assess whether Plaintiff's claims are preempted by ERISA, *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (noting that denial of discovery on issue of subject matter jurisdiction results in prejudice when a "more satisfactory showing of the facts is necessary"), the Court grants Plaintiff's alternative request for additional time for discovery. *See also Hall v. Usable Life*, No. 4:08CV4214 BSM, 2009 WL 2195828, at *1 (E.D. Ark. July 22, 2009) (noting that court permitted parties to conduct discovery on issue of whether plan was church plan after plaintiff filed motion to remand) (ruling on plaintiff's second motion to remand, which was filed after limited discovery on church plan issue). The parties are given sixty (60) days to

conduct discovery regarding the nature of the Plan and the relationship of Marian and SSM with SJHS and the SJHS employers. If, after completion of discovery on these issues, Plaintiff continues to maintain that the Plan is a church plan, Plaintiff may file a second motion to remand on or before June 13, 2011.

## V. Conclusion

For the reasons outlined above, Plaintiff's Motion to Remand (Doc. 11) is granted in part and denied in part. Specifically, Plaintiff's motion to remand is denied, but Plaintiff's alternative request for additional discovery is granted. The denial of Plaintiff's motion to remand is without prejudice, as Plaintiff is permitted to file a second motion to remand after conducting limited discovery, as outlined above. Any such second motion to remand shall be filed with the Court on or before June 13, 2011.

**SO ORDERED this 31st day of March, 2011.**

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**